IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 8 CR 629 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| SHARIFF MILLER ) | |

**MEMORANDUM OPINION AND ORDER**

A three-count amended superseding indictment charged Shariff Miller with possession of five grams or more of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) ("Count I"), being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1) ("Count II"), and possession of a firearm in furtherance of a drug crime in violation of 18 U.S.C. § 924(c)(1)(A) ("Count III"). (Dkt. No. 56-2.) A jury found Miller guilty on all three counts. (Dkt. No. 76.) Miller successfully appealed his convictions on Counts I and III. *See United States v. Miller*, 673 F.3d 688, 702 (7th Cir. 2012). On remand, a second jury found Miller guilty on Count I but not Count III. Miller now moves for judgment of acquittal or, alternatively, a new trial. This Court denies Miller's motion.

**BACKGROUND**

Law enforcement officers searched Miller's residence in Zion, Illinois on April 21, 2008. Although Miller attempted to flee as authorities entered the residence, authorities caught Miller and arrested him. Authorities found crack cocaine and several guns in the residence during the search.

1

### A. Miller's First Trial and Appeal

On May 26, 2009, a jury convicted Miller on Counts I, II, and III. Miller appealed. On appeal, Miller raised three issues. First, Miller argued that an informant whose reliability was unknown supplied uncorroborated information that did not establish probable cause to issue the search warrant that led to Miller's arrest. *Miller*, 673 F.3d at 692. Second, Miller argued that this Court should not have allowed testimony that Miller pulled the same pistol found during the search of the residence from his waistband two months earlier. *Id.* Third, Miller argued that this Court should not have allowed the prosecution to introduce evidence of a prior felony conviction for possession of cocaine with intent to distribute. *Id.*

Miller's first argument failed because the police officers who executed the search warrant relied in good faith on a judge's decision to issue the warrant. *Id.* at 693. Miller's second argument failed because Miller's possession two months earlier of the same gun found under his mattress was admissible as circumstantial evidence of Count II. *Id.* at 695. Miller's third argument, however, resulted in the reversal of his convictions on Counts I and III. *Id.* at 700. Even though the prosecution's evidence "was certainly strong" without it, the admission of the prior conviction warranted a new trial. *Id.* at 701. As a result, Miller's case returned to this Court for a new trial on Counts I and III. *Id.* at 702. And though Miller's conviction on Count II stands, this Court must resentence Miller on that count after Miller's new trial on Counts I and III concludes. *Id.*

### B. Miller's Second Trial on Remand

Although counsel represented Miller during his first trial and on appeal, Miller represented himself on remand. Despite this Court's efforts to provide Miller with representation, Miller repeatedly failed to work with his attorneys. As explained in an order dated July 3, 2013,

this Court has gone to unprecedented lengths to arm Miller with adequate legal representation in this case. (Dkt. No. 301 at 3-23.) Miller has gone through eight attorneys since his indictment, seven of which this Court appointed. Miller either fired or forced each of his court-appointed attorneys to withdraw based on ethical conflicts. After having an extensive colloquy with Miller concerning self-representation and in view of his persistent inability to work with counsel, this Court determined that Miller knowingly and voluntarily waived his right to counsel. *See id.*

1. **Pretrial Proceedings**

Prior to trial, Miller filed several pretrial motions. Miller moved for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to dismiss Count III, to disclose a confidential informant, to suppress evidence, to dismiss the indictment, and to compel the production of grand jury material. With the exception of Miller's motion to dismiss the indictment, this Court denied Miller's pretrial motions in an order dated July 3, 2013. (Dkt. No. 301.) This Court held an evidentiary hearing on Miller's motion to dismiss the indictment, during which Miller failed to meet his burden to show error or prejudice based on witness testimony before the grand jury. As a result, this Court denied Miller's motion to dismiss the indictment. (Evid. Hr'g Tr. 114:13-120:20 (July 8, 2013).)

2. **Trial**

At trial, the government presented four witnesses. Luis Rivera, a criminal investigator for the city of North Chicago, testified that several agencies executed a search warrant that authorized the search of Miller's residence and person on April 21, 2008. (Trial Tr. vol. 2-A, 387:6-25 (July 10, 2013).) Detective Rivera described the residence as a single-family dwelling. (*Id.* at 407:6-24.) Detective Rivera was part of the perimeter detail during the initial stages of the search. (*Id.* at 393:6-25.) Detective Rivera was near the southeast corner of the residence when

3

he heard the entry team announce their presence and then enter the residence. (*Id.* at 393:6-25 and 395:13-396:9.) Moments later, Detective Rivera saw Miller exit the residence and flee. (*Id.* at 396:10-23.) After police officers apprehended Miller, Detective Rivera entered the residence but did not participate in the search. (*Id.* at 397:2-8.) Rather, Detective Rivera stayed with the occupants of the residence while others conducted the search. (*Id.* at 423:1-12.)

Brian Carder, a retired sergeant for the North Chicago Police Department, testified that the North Chicago Police Department, the Zion Police Department, the Lake County Metropolitan Drug Enforcement Group, and agents from the Bureau of Alcohol, Tobacco, and Firearms executed a search warrant on Miller's residence on April 21, 2008. (Trial Tr. vol. 2-B, 445:15-446:3, 446:23-447:7 (July 10, 2013).) The Zion Police Department's tactical team entered and secured the residence. (*Id.* at 447:17-22.) Sergeant Carder was part of the perimeter detail while the tactical team entered and secured the residence. (*Id.* at 448:8-14.) Sergeant Carder observed a Black male look out of a window of the residence while the tactical team was at the front door. (*Id.* at 454:3-15.) Sergeant Carder then saw the Black male withdraw from the window. (*Id.* at 454:16-21.) Moments later, Sergeant Carder saw a Black male running from the residence. (*Id.* at 455:2-24.) The Black male running from the residence was Miller. (*Id.* at 456:13-18.) Once the residence was secure, Sergeant Carder took charge of the search and served as the evidence collection officer. (*Id.* at 448:8-14.)

After he entered the residence, Sergeant Carder spoke with Lieutenant Dumyahn of the Zion Police Department. (*Id.* at 457:3-12.) Sergeant Carder then went to the southeast bedroom of the residence based on information he learned from Lieutenant Dumyahn. (*Id.* at 457:13-458:5.) After retrieving his evidence kit from his vehicle, Sergeant Carder photographed the interior of the residence, to include items of interest in plain view. (*Id.* at 458:6-22.) These items

4

included: (1) ten knotted plastic bags sitting on the bed in the southeast bedroom; (2) an orange shoebox sitting on the bed in the southeast bedroom; (3) a black shoebox in the closet of the southeast bedroom; and (4) a Remington Rand .45 caliber handgun taken from between the mattresses of the bed in the southeast bedroom. (*Id.* at 458:23-459:2, 460:14-19, 461:3-13, 461:14-21, and 462:14-22.)

The ten knotted bags contained a white substance. (*Id.* at 475:15-22.) The orange shoebox contained an electronic scale, traffic tickets, and other paperwork. (*Id.* at 477:12-19.) The traffic tickets and other paperwork, which included a checkbook and a real estate contract, had Miller's name on them. (*Id.* at 478:24-483:12.) There were documents in the shoebox that had others' names as well. (*See*, *e.g.*, Trial Tr. vol. 3-A, 560:13-21 (July 11, 2013).) The black shoebox contained a checkbook with Miller's name on it, a Starburst candy bag, smaller pieces of torn paper, and other documents that had Miller's name on them. (Trial Tr. vol. 2-B, 483:20-485:11, 488:2-6, 493:2-495:8 (July 10, 2013).) Two Ziploc plastic bags were in the Starburst candy bag. (*Id.* at 485:12-21.) One of the Ziploc bags contained 25 smaller knotted plastic bags, each of which contained a white, rock-like substance. (*Id.*) The second Ziploc bag contained four knotted bags, each of which held a loose, white, rock-like substance. (*Id.* at 485:12-21, 487:3-10.) The torn paper had writing that indicated "1200$/50s," "2400$/20s," "500$/20s," and "500$/20s." (*Id.* at 488:23-489:3.) The black shoebox also contained a letter from the Public Defender's Office addressed to Miller. (*Id.* at 490:8-23.)

Timothy Anderson, a forensic chemist with the Drug Enforcement Agency, testified that he tested the contents of the two Ziploc plastic bags found in the Starburst bag and the ten knotted plastic bags found on the bed. (Trial Tr. vol. 3-B, 669:20-670:5, 670:11-14 (July 11, 2013).) One of the Ziploc plastic bags contained cocaine base with a net weight of 16.1 grams.

5

(Trial Tr. vol. 3-B, 669:20-670:5, 687:23-688:5 (July 11, 2013).) The second Ziploc plastic bag contained cocaine base with a net weight of 26.2 grams. (*Id.* at 689:15-23.) The ten knotted plastic bags contained cocaine base with a net weight of 0.69 grams. (*Id.* at 691:12-19.)

Robert Coleman, a lieutenant with the Will County Sheriff's Office, testified as an expert in the identification of narcotics and the means and methods used by narcotics traffickers. (*Id.* at 695:2-10, 707:20-708:1.) Lieutenant Coleman explained that he was familiar with the ways in which narcotics traffickers package crack cocaine for distribution and the amounts of crack cocaine considered typical for personal use. (*Id.* at 705:14-20.) Typical amounts of crack cocaine sold on the street are one-tenth of a gram for ten dollars or one-fifth of a gram for twenty dollars. (*Id.* at 709-710:1.) Forty grams of crack cocaine is a distribution quantity that contains four hundred individual servings. (*Id.* at 710:2-8.) Electronic scales are necessary to divide distribution quantities of crack cocaine into individual servings. (*Id.* at 714:20-715:11.)

Miller presented five witnesses. Anthony Spadafora, a forensic scientist in the identification unit of the Northeastern Illinois Regional Crime Laboratory, testified that he did not identify Miller's fingerprints on the Starburst bag or the two Ziploc plastic bags. (Trial Tr. vol. 4-A, 741:15-742:1, 742:18-21, 758:22-759:19 (July 12, 2013).) Mr. Spadafora further explained that the absence of Miller's fingerprint on the plastic bags did not mean that Miller did not touch the bags. (*Id.* at 765:13-766:9.)

Steve Dumyahn, the deputy chief of the Zion Police Department, testified that he reviewed reports related to the search of the residence but did not recall the case. (*Id.* 792:24-793:24.) Renee Borko, the mother of Miller's son, testified that Miller lived in the basement of the residence. (*Id.* at 797:1-11, 799:5-11.) She also testified that the residence contained two separate apartments but conceded that the basement did not have a kitchen. (*Id.* at 799:16-21,

807:5-7.) Keyara Phifer, Miller's cousin, testified that the residence contained two apartments. (*Id.* at 856:15-857:1, 858:19-20.) She further testified that Miller lived in the basement. (*Id.* at 858:22-24.) When she visited Miller, she entered through the side door, went through the kitchen, and down stairs to get to the basement. (*Id.* at 862:16-863:2.) There was no door separating the basement from the kitchen of the residence. (*Id.* at 863:3-13.) Doreasha Phifer, also Miller's cousin, testified that Miller lived in the basement of the residence. (*Id.* at 869:9-19, 871:6-8.) She considered the residence to have two apartments, one of which was the basement. (*Id.* at 871:21-872:1.) When she visited with Miller at the residence, she entered the basement through the stairs near the kitchen. (*Id.* at 875:2-5.) There was no door separating the basement from the kitchen of the residence. (*Id.* at 875:6-20.)

After hearing the evidence, the jury returned a verdict of guilty as to Count I. (Trial Tr. vol. 5-B, 1014:1-4 (July 15, 2013).) The jury also found that Count I involved at least 28 grams of mixtures containing cocaine base but less than 280 grams. (*Id.* at 1014:5-9.) The jury did not find Miller guilty of Count III. (*Id.* at 10-14.)

## STANDARD OF REVIEW

The law of the case doctrine requires this Court "to confine its discussion [at trial] to the issues remanded." *United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001). To determine the scope of the issues on remand, courts must eliminate issues that have been either "waived or decided." *United States v. Husband*, 312 F.3d 247, 250 (7th Cir. 2002). Thus, "once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991). In addition, "any issue that could have but was not raised on appeal is waived and thus not remanded." *Husband*, 312 F.3d at 250 (citing *Morris*, 259 F.3d at 898) ("[P]arties

7

cannot use the accident of remand as an opportunity to reopen waived issues."). However issues that "arise anew on remand are generally within the scope of the remand." *Id.* at 251 n.4 (citing *Morris*, 259 F.3d at 898).

"A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). This Court considers the evidence in the light most favorable to the prosecution and makes all reasonable inferences in the prosecution's favor when reviewing a motion for a judgment of acquittal. *United States v. Hassebrock*, 663 F.3d 906, 918 (7th Cir. 2011). This Court may overturn a guilty verdict "only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Id.* (quoting *United States v. Huddleston*, 593 F.3d 596, 601 (7th Cir. 2010)). If any rational trier of fact could have found that the defendant committed the essential elements of the crime, then this Court must affirm the conviction. *Hassebrock*, 663 F.3d at 918. Thus, a defendant seeking a judgment of acquittal "faces a nearly insurmountable hurdle." *Id.* (quoting *United States v. Morris*, 576 F.3d 661, 665-66 (7th Cir. 2009)).

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." But a court must not overturn a jury verdict in a criminal case lightly. *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994). The verdict must be so contrary to the weight of the evidence that the interests of justice require a new trial. *United States v. Chambers*, 642 F.3d 588, 592 (7th Cir. 2011). The complete record must leave a strong doubt as to the defendant's guilt. *Santos*, 20 F.3d at 285. "Trial courts have wide discretion in deciding a motion for a new trial." *Arreola v. Choudry*, 533 F.3d 601, 605 (7th Cir. 2008).

**DISCUSSION**

Miller seeks a judgment of acquittal as to Counts I and II or, in the alternative, a new trial. Miller makes seven claims in support of his motion. Miller claims that: (1) the evidence does not support a finding of guilt beyond a reasonable doubt; (2) this Court should have dismissed the indictment against Miller because a witness committed perjury before the grand jury; (3) this Court should have held a *Franks* hearing; (4) the jury panel should have included African-American males; (5) the government failed to turn over exculpatory materials; (6) the indictment failed to charge Miller with constructive possession; and (7) this Court issued several improper jury instructions. None of Miller's claims have any merit.

**I.  Miller's Claims Concerning Count II and the *Franks* Hearing Are Beyond the Scope of Remand**

The United States Court of Appeals for the Seventh Circuit remanded this case "for new sentencing on the felon-in-possession charge and a new trial on the other charges consistent with [its] opinion." *Miller*, 673 F.3d at 702. Absent special circumstances, this Court may not revisit previously resolved issues. *United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001). The Seventh Circuit affirmed the jury's determination that Miller was guilty as to Count II. This Court is not aware of any special circumstances that would permit it to revisit Miller's conviction as to Count II. Accordingly, this Court denies Miller's motion with respect to Count II as beyond the scope of remand.

The same is true for Miller's motion with respect to the *Franks* hearing. A *Franks* hearing examines whether police officers made false statements to obtain a search warrant. Miller previously challenged the search warrant that led to his arrest on appeal. The Seventh Circuit concluded that the officers relied on the search warrant in good faith. *Miller*, 673 F.3d at

692-93. Miller has waived all challenges to the search warrant that he did not raise during his first trial or on appeal. *See Husband*, 312 F.3d at 250 ("First, any issue that could have been but was not raised on appeal is waived and thus not remanded.")

But even if Miller could challenge the search warrant on remand, he has not shown that a *Franks* hearing is necessary. Miller must make a substantial preliminary showing that the affidavit contained a material false statement necessary to support the finding of probable cause and that statement was made intentionally or with reckless disregard for the truth. *United States v. Smith*, 576 F.3d 762, 765 (7th Cir. 2009). Here, Miller provides no basis whatsoever for his claim that Detective Rivera made false statements in his affidavit let alone made false statements intentionally or with reckless disregard for the truth. Miller's naked assertion is insufficient. *See United States v. Johnson*, 580 F.3d 666, 671 (7th Cir. 2009) ("Conclusory, self-serving statements are not enough to obtain a *Franks* hearing."). Accordingly, this Court denies Miller's motion with respect to the *Franks* hearing as not only beyond the scope of remand but also meritless.

## II. The Record Contains More Than Sufficient Evidence to Satisfy the Elements of Count I

This Court must affirm Miller's conviction on Count I because the record contains sufficient evidence from which one could have found Miller guilty beyond a reasonable doubt. Count I required the government to prove three elements beyond a reasonable doubt: (1) Miller knowingly possessed a controlled substance; (2) Miller intended to distribute that substance to another person; and (3) Miller knew the substance contained some kind of a controlled substance. The government presented evidence that Miller lived at a residence where authorities found crack cocaine. Authorities found the crack cocaine on a bed and in a black shoebox kept in

the southeast bedroom of that residence. That shoebox contained Miller's personal documents. This evidence shows that Miller knowingly possessed a controlled substance.

The crack cocaine found on the bed and some of the crack cocaine in the black shoebox was in small, knotted, plastic bags. The government presented evidence that this packaging was for distribution. The amount of crack cocaine found in the residence exceeds that normally purchased for personal use. Typically, one who purchases crack cocaine for personal use buys a small amount for ten or twenty dollars. Further, torn paper in one of the Ziploc plastic bags indicated "1200$/50s," "2400$/20s," "500$/20s," and "500$/20s." This pricing information is consistent with crack cocaine packaged for street sales. The government also presented evidence that an orange shoebox contained an electronic scale. Electronic scales are necessary to measure crack cocaine for distribution. The orange shoebox also contained Miller's personal documents. This evidence shows that Miller intended to distribute a controlled substance. This evidence also shows that Miller knew that the controlled substance was crack cocaine as the packaging and pricing was consistent with crack cocaine sold on the street.

This is not just some evidence of Miller's guilt. It is strong evidence. *See Miller*, 673 F.3d at 700 ("though the evidence of Miller's guilt in this case was strong. Police found a scale suitable for measuring drugs and crack cocaine packaged for distribution, both in shoe boxes containing Miller's personal papers.") Yet Miller claims that the jury should not have relied on the testimony of Sergeant Carder and Detective Rivera to convict him because they were not credible. But the verdict indicates otherwise. *See United States v. Baker*, 453 F.3d 419, 423 (7th Cir. 2006) (explaining that a guilty verdict indicates jury found police officers credible). This Court will not second-guess the jury's findings. Besides, a court may set aside a jury's credibility determination only if the testimony is exceedingly improbable, meaning that it is internally

inconsistent or implausible on its face. *United States v. Johnson*, 729 F.3d 710, 715 (7th Cir. 2013). Miller has not identified and this Court has not found any of Sergeant Carder's or Detective Rivera's testimony to be exceeding improbable.

Because the evidence is sufficient to support the jury's verdict as to Count I, particularly when viewed in the light most favorable to the prosecution, this Court denies Miller's motion for a judgment of acquittal. This Court also denies Miller's motion for a new trial because the evidence leaves no doubt as to Miller's guilt.

### III. The Jury's Verdict Renders Any Error in the Grand Jury Proceedings Harmless

Miller claims that this Court should have dismissed the indictment because Chanda Borko and ATF Agent Mark Shaffer committed perjury in front of the grand jury. Miller claims that the government subjected Chandra Borko to duress, coercion, threats of imprisonment, and threats that her children would be taken away from her if she did not testify against Miller. Miller also claims that Agent Shaffer misled the grand jury with respect to fingerprint evidence. (Evid. Hr'g Tr. 113:23-114:12 (July 8, 2013).)

As a threshold matter, the jury's guilty verdict renders any possible error in the grand jury proceedings harmless. *United States v. Vincent*, 416 F.3d 593, 602 (7th Cir. 2005); *United States v. Morgan*, 384 F.3d 439, 443 (7th Cir. 2004). Here, the jury found Miller guilty on Count I without testimony from either Chanda Borko or Agent Shaffer. This verdict means that there was probable cause to believe that Miller was guilty of Count I despite Chanda Borko's or Agent Shaffer's testimony. *Vincent*, 416 F.3d at 602 ("But the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt.").

Further, after holding an evidentiary hearing on this issue, this Court concluded that Miller did not show that the government coerced Chanda Borko's testimony. (Evid. Hr'g Tr. 120:15-20 (July 8, 2013).) This Court also concluded that Agent Shaffer's testimony concerning the orange shoebox, the black shoebox, and the gun found between the mattresses established probable cause to indict Miller. (*Id.* at 118:7-13.) Therefore, this Court denies Miller's motion to dismiss the indictment because Miller has not shown any error or any prejudice because of either Chanda Borko's or Agent Shaffer's testimony.

## IV. Miller was Tried Before a Jury Selected at Random

"[T]he makeup of any given venire is not significant, provided all rules for selection have been observed." *United States v. Phillips*, 239 F.3d 829, 842 (7th Cir. 2001). Here, Miller complains that the jury panel did not have any African-American males. But Miller has not shown that this Court deviated from the procedures used by the United States District Court for the Northern District of Illinois to select potential jurors. That plan draws from registered voters, licensed drivers, and people who have received identification cards from the Illinois Secretary of State. The plan covers Cook, Du Page, Will, Lake, Grundy, Kane, Kendall, and La Salle counties. In this case, the plan produced a jury panel with five African-American females but no African-American males. Miller is not entitled to a jury having any particular composition. *Phillips*, 239 F.3d at 842. Rather, "the right to a jury trial guarantees the criminal defendant a fair trial by a panel of impartial, 'indifferent' jurors." (*Id.*) That is what Miller received in this case. Therefore, Miller's claim that he did not receive an impartial jury is without merit.

## V. The Prosecution Did Not Suppress Any Evidence Favorable to Miller

"A *Brady* violation occurs when the prosecution suppresses evidence favorable to the defense and the evidence was material to an issue at trial." *United States v. Mota*, 685 F.3d 644,

648 (7th Cir. 2012). Miller claims that the prosecution violated *Brady* when it failed to turn over a police report from the Zion Police Department and evidence that witness Chanda Borko received $1700 from the government. But Miller received the police report prior to trial, which means he had the opportunity to use it at trial. Moreover, Miller has not identified anything in the police report as material. Miller claims that the police report contained information that contradicted Sergeant Carder's and Detective Rivera's testimony, but he did not specify what that information is or use it at trial to cross examine either witness. Moreover, Miller has not shown that the police report—which he had at trial—would have had any effect on the outcome of the trial. A *Brady* violation warrants a new trial only if the result of the proceeding would have been different had the prosecution disclosed the document. *See Mota*, 685 at 648.

After Miller's first trial, the government made a payment to Chanda Borko. Chanda Borko testified at Miller's first trial that she saw Miller with the same gun found under the mattress in the southeast bedroom of the residence two months before Miller's arrest. *See Miller*, 673 F.3d at 694; *see also* Trial Tr. vol. 2-B, 465:5-466:25 (May 29, 2009). Prior to Miller's second trial, Chandra Borko recanted her previous testimony in this case. The government represents that the payment was to cover her relocation expenses because someone threatened her after she testified against Miller. (Evid. Hr'g Tr. 9:6-10:7 (July 8, 2013).) Because the payment occurred after Miller's first trial, he could not have questioned her about the payment during his first trial. And Miller knew about the payment to Chanda Borko prior to the second trial. Therefore, no *Brady* violation occurred. For these reasons, Miller's *Brady* claims are without merit.

## VI. The Indictment Did Not Have to Charge Miller with Constructive Possession

An indictment must include the essential elements of the crime charged. *See United States v. Auerbach*, 913 F.2d 407, 411 (7th Cir. 1990). The three elements required for a conviction under 21 U.S.C. § 841(a)(1) are knowing and intentional possession, possession with the intent to distribute, and knowledge that the material is a controlled substance. *United States v. Campbell*, 534 F.3d 599, 605 (7th Cir. 2008). The prosecution may prove either actual or constructive possession to satisfy the possession element. *Id.* Possession—and not the manner of—is the essential element of the crime. *See Wilson v. United States*, 91 F.3d 147 (7th Cir. 1996) (unpublished opinion) ("neither the type of possession nor the evidence by which the government planned to prove possession at trial was an essential element of the crime [of felon in possession of a firearm] that had to be set out in the indictment."). Therefore, Miller's argument fails because the type of possession is not an essential element of the offense.

## VII. This Court Properly Instructed the Jury on the Law

This Court's jury instructions correctly informed the jury as to the law. A proper jury instruction correctly states the law. *United States v. DiSantis*, 565 F.3d 354, 359 (7th Cir. 2009). A district court has substantial discretion as to the precise wording of a jury instruction. *Id.* Here, this Court instructed the jury in accordance with the law. Therefore, Miller's claims are frivolous.

Miller's first jury instruction claim concerns possession. Possession is an essential element of Count I. This Court instructed the jury on possession as follows:

> A person possesses an object if he has the ability and intention to exercise direction or control over the object, either directly or through others. A person may possess an object even if he is not in physical contact with it and even if he does not own it.

> More than one person may possess an object. If two or more persons share possession, that is called "joint" possession. If only one person possesses the object, that is called "sole" possession. The term "possess" in these instructions includes both joint and sole possession.

Though Miller objected to this instruction generally, he did not set forth the grounds for this or any other objection to this Court's jury instructions as required by Fed. R. Crim. Pro. 30. Nor could he, as this instruction reflects controlling precedent. Direct physical control shows actual possession. *Phillips*, 239 F.3d at 847. The ability to exercise dominion and control over an object directly or through others shows constructive possession. *Id.* And because others were present in the residence at the time of the search, the instruction concerning sole and joint possession was appropriate. *See United States v. Aldaco*, 201 F.3d 979, 990 (7th Cir. 2000) (affirming instruction on sole and joint possession where four people were on a rooftop near a gun). Because this instruction reflects controlling precedent, this Court did not err in giving it to the jury.

The same is true for Miller's four remaining claims concerning this Court's jury instructions. This Court instructed the jury that "Intent to distribute can be inferred from the possession of a quantity of a controlled substance larger than needed for personal use" as stated in *United States v. Maholias*, 985 F.2d 869, 879 (7th Cir. 1993). This Court instructed the jury "possession of a controlled substance with intent to distribute is a drug trafficking crime" in accordance with *United States v. Mitten*, 592 F.3d 767, 777 (7th Cir. 2010) ("His drug trafficking crime was possession of crack cocaine with intent to distribute.").

This Court instructed the jury "You should not speculate why any other person whose name you may have heard during trial is not currently on trial before you." This is an appropriate cautionary instruction. *See United States v. O'Connor*, 656 F.3d 630, 645 (7th Cir. 2011) (accepting cautionary instruction not to speculate as to others not currently on trial). This Court

instructed the jury "Your verdict, whether it is guilty or not guilty, must be unanimous" as stated in *United States v. Schiro*, 679 F.3d 521, 532 (7th Cir. 2012) ("Although the judge correctly instructed the jurors that their 'verdict, whether it be guilty or not guilty, must be unanimous . . . .'"). Because all of this Court's jury instructions were in accordance with controlling precedent, Miller's claims concerning this Court's jury instructions are without merit.

## CONCLUSION

For the reasons stated herein, this Court denies Miller's motion for a judgment of acquittal and his motion for a new trial.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: November 22, 2013